UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOREY JOHNSON,

       Plaintiff,                                                           Hon. Paul L. Maloney

v.                                                                               Case No. 1:20-cv-1055

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security regarding Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining

whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 29 years old on his alleged disability onset date. (ECF No. 11-5, PageID.190). He successfully completed high school and worked previously as a cook and pizza cook. (ECF No. 11-2, PageID.59-60). Plaintiff applied for benefits on February 12, 2019, alleging that he had been disabled since September 12, 2018,

due to an unspecified mood disorder. (ECF No. 11-5, 11-6, PageID.190-97, 222). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).

Following a hearing, ALJ David Read, in an opinion dated January 22, 2020, determined that Plaintiff did not qualify for disability benefits. (ECF No. 11-2, PageID.50-61, 68-101). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.,* PageID.40-44). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment

existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from personality disorder, mood disorder, and polysubstance abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 11-2, PageID.53-54).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform work at all exertional levels subject to the following non-exertional limitations: (1) he is limited to simple, routine, and repetitive tasks but not at a production rate pace; (2) he is limited to occasional interaction with co-workers and the public; (3) in addition to normal breaks he will be off task less than 10 percent of the time during an 8-hour workday; and (4) he will be absent from work, on average, less than one day per month. (*Id.*, PageID.54-55).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed more than 1.5 million jobs in the national economy an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (ECF No. 11-2, PageID.96-98). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ found that Plaintiff retained the ability to

perform work subject to several non-exertional limitations. Plaintiff argues that this finding is not supported by substantial evidence.

On September 13, 2018, Plaintiff was involuntarily hospitalized after "feeling suicidal." (ECF No. 11-7, PageID.270). Plaintiff reported that he had been abusing alcohol, marijuana, cocaine, and methadone for more than ten years. (*Id.*). Upon admission, Plaintiff exhibited "normal" speech with "depressed" mood and "constricted affect." (*Id.,* PageID.271). Plaintiff's insight and judgment were "limited," but he exhibited "no delusions" and his thought process was "logical." (*Id.*). Plaintiff initially refused medication, but subsequently changed his mind. (*Id.,* PageID.269-71). Plaintiff was discharged on October 1, 2018, with instructions to continue taking his medication and participate in out-patient treatment. (*Id.,* PageID.269). While Plaintiff was initially compliant with his discharge instructions, he eventually stopped taking his medication resulting in a second hospitalization from October 18, 2018, through October 26, 2018. (*Id.,* PageID.272-75).

Following his discharge, Plaintiff continued taking his medication and began treatment with Community Mental Health. (*Id.,* PageID.284-329). Treatment notes dated November 9, 2018, indicate that Plaintiff was continuing to take his medication without side effects. (*Id.,* PageID.315). Plaintiff's mental state was characterized as "stable" and he exhibited "connected, organized thinking patterns and normal speech." (*Id.*). Plaintiff also reported that he was excited about recently being offered a job. (*Id.*). On January 2, 2019, Plaintiff reported that he

was "a lot better" and feeling "more level headed."  (*Id.,* PageID.327).   A February 8, 2019, consultive assessment concluded that Plaintiff could perform "simple work" with "occasional contact with coworkers, supervisors and the public."   (ECF No. 11-3, PageID.111).

On May 20, 2019, Plaintiff reported that he had started "bike riding" and it was "going well."   (ECF No. 11-7, PageID.332).   Treatment notes dated June 19, 2019, indicate that Plaintiff's activity level was "increased" and "much improved." (*Id.*, PageID.362).   Plaintiff's depressive disorder was "improved" and his alcohol use disorder was "in early remission."   (*Id.*, PageID.362).   On June 17, 2019, Plaintiff reported that he was "going for more walks during the day" and "doing yoga up to 3x/week."   (*Id.*, PageID.333).   Over the next several months, Plaintiff reported increasing his social activities.   (*Id.*, PageID.335, 337, 339).

A December 4, 2019, examination revealed that Plaintiff was "much improved" and "doing well" with "no concerns."   (*Id.*, PageID.358-60).   Plaintiff denied experiencing voices, paranoia, depression, or anxiety.   (*Id.*, PageID.358). Plaintiff's mother reported that Plaintiff "has made many strides" and that "it's like a light switch has gone off w[ith] him."   (*Id.*).   Plaintiff reported that he had taken "no street drugs in the past year" and had only "slip[ped] up a couple of times" regarding alcohol.   (*Id.*).   Plaintiff was diagnosed with: (1) unspecified depressive disorder, improved and (2) alcohol use disorder, severe, in early remission.   (*Id.*, PageID.360).

-7-

Plaintiff first argues that the ALJ failed to afford appropriate weight to a "court order" mandating that Plaintiff receive "a year of treatment commencing with 90 days of inpatient treatment." As previously noted, Plaintiff was involuntarily hospitalized in September 2018. While not entirely clear from the record, it appears that a court order may have been entered in December 2018, requiring Plaintiff to receive mental health treatment for one year.[1] In November 2019, application was apparently made to continue the court's order for an additional year. (ECF No. 11-6, PageID.260-66). While the record contains no indication whether this second application was granted, treatment notes dated November 21, 2019, indicate that Plaintiff planned to "stipulate to the court order." (ECF No. 11-7, PageID.382).

As Plaintiff correctly notes, the threshold for obtaining a court order mandating hospitalization and mental health treatment is high. *See* Mich. Comp. Laws § 330.1401. Plaintiff was initially hospitalized in September 2018, because he was "feeling suicidal," thus apparently satisfying the standard for involuntary hospitalization under Michigan law. It must be remembered, however, that, at that time, Plaintiff was abusing alcohol and other substances, and he was not taking any medication to alleviate his condition. As discussed above, once Plaintiff stopped abusing substances, began taking appropriate medication, and participated in out-

---

[1] The administrative record contains the application and supporting documents regarding a December 2018 application for court ordered treatment for Plaintiff. (ECF No. 11-7, PageID.277-83). But it is not clear from the record whether this application was granted. Nevertheless, the Court will assume the veracity of Plaintiff's assertion that the court entered an order requiring Plaintiff to receive "a year of treatment commencing with 90 days of inpatient treatment."

patient treatment, his condition and functioning quickly improved. Thus, the Court is not persuaded by Plaintiff's argument that the ALJ somehow failed to ignore or afford sufficient weight to the court order(s) entered in this matter.

Plaintiff next argues that "the ALJ suggests the medical record finds no limitations precluding work." This argument is not well-developed, but it appears that Plaintiff is asking this Court to re-weigh the medical evidence and impose a more restrictive RFC on Plaintiff. This Court cannot re-evaluate the evidence, moreover, the ALJ's RFC assessment is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ failed to afford appropriate weight to a "Medical Needs" form completed on January 16, 2020, by one of his care providers. (ECF No. 11-2, PageID.65-66). The person who completed this form did not articulate any functional limitations that are inconsistent with the ALJ's RFC. Instead, this person simply concluded that Plaintiff was disabled because he could not perform any job. The conclusion whether Plaintiff is disabled, however, is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). Accordingly, the ALJ properly disregarded this form.

## II.   Listing 12.03

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that the ALJ erred by failing to find that he satisfied the requirements of Section 12.03 of the Listings which concerns "Schizophrenia spectrum and other psychotic disorders."

Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). An impairment satisfies a listing, however, "only when it manifests the specific findings described in all of the medical criteria for that particular impairment." *Lambert v. Commissioner of Social Security*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)).

To satisfy the requirements of Section 12.03, Plaintiff must present "medical documentation" of one of the following: (1) delusions or hallucinations; (2) disorganized thinking (speech); or (3) grossly disorganized behavior or catatonia. *See, e.g., Johnson v. Commissioner of Social Security*, 2019 WL 4417686 at *7 (N.D. Ohio, Sept. 16, 2019) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00). Plaintiff must then also demonstrate one of the following:

1. an extreme limitation in one, or marked limitation in two, of the following areas of mental functioning:

    (a) understand, remember, or apply information;

    (b) interact with others;

    (c) concentrate, persist, or maintain pace; and

    (d) adapt or manage oneself;

OR

2. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of [a mental] disorder over a period of at least two years, and there is evidence of both:

>   (a) Medical treatment, mental health therapy, psychosocial support(s), or highly structured setting(s) that is ongoing and diminishes the symptoms and signs of your mental disorder;
>
>   and
>
>   (b) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Ibid.*

At Step III of the sequential evaluation process, the ALJ assessed whether Plaintiff satisfied the requirements of any Listing. (ECF No. 11-2, PageID.53-54). Specifically, the ALJ considered whether Plaintiff satisfied Section 12.04 (depressive, bipolar and related disorders) or Section 12.08 (personality and impulse-control disorders). While the ALJ did not specifically assess whether Plaintiff satisfied Section 12.03, the ALJ nevertheless specifically evaluated whether Plaintiff satisfied the requirements in sections (1) or (2) above as such are part of the assessment of Section 12.04. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.04.

With respect to the four areas of functioning in section (1) above, the ALJ found that Plaintiff experiences moderate limitation. Plaintiff offers no argument to the contrary. The ALJ further determined that Plaintiff did not satisfy the requirements of subsection (2) above. Again, Plaintiff offers no argument to the contrary. The ALJ's conclusion that Plaintiff fails to satisfy Section 12.03 of the Listings is supported by substantial evidence. Accordingly, this argument is rejected.

### III. Development of the Record

Plaintiff appeared at the administrative hearing without the assistance of counsel. Instead, Plaintiff was accompanied by his mother and his Community Mental Health caseworker, both of whom testified. Plaintiff argues that he is entitled to relief because the ALJ failed to fully develop the record.

Plaintiff bears the ultimate burden to establish that he is disabled. *See, e.g., Strang v. Commissioner of Social Security*, 611 Fed. Appx. 271, 275 (6th Cir., May 4, 2015). As the relevant Social Security regulations make clear, it is the claimant's responsibility to provide the evidence necessary to evaluate his claim for benefits. *See* 20 C.F.R. §§ 404.1512 and 404.1514. As the Supreme Court has observed, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ nevertheless has an affirmative responsibility to "develop [a claimant's] complete medical history" and must "make every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." Strang, 611 Fed. Appx. at 275-76. Moreover, the ALJ's "duty to develop a full and fair administrative record is heightened. . .when the disability claimant is not represented by counsel at the administrative hearing." *Id.* at 276. Ultimately, whether the ALJ satisfied his duty to properly develop the record is assessed on a case-by-case basis. *See Forrest v. Commissioner of Social Security*, 591 Fed. Appx. 359, 363 (6th Cir., Nov. 17, 2014).

Here, the ALJ explained to Plaintiff that he had the right to the assistance of counsel at the hearing. (ECF No. 11-2, PageID.70-71). The ALJ also informed Plaintiff that the hearing would be rescheduled if he wished to obtain representation. (*Id.*, PageID.71). Plaintiff declined and opted to proceed with the hearing. (*Id.*, PageID.71). The ALJ questioned Plaintiff about his prior work experience and why he believed he was unable to work. (*Id.*, PageID.74-82).

The ALJ questioned Plaintiff's mother and case worker regarding Plaintiff's treatment and functioning. (*Id.*, PageID.82-96). The ALJ informed Plaintiff that he would keep the record open for an addition 24 days so that he could submit updated medical records. (*Id.*, PageID.99-100). Plaintiff's case worker informed the ALJ that he would assist Plaintiff in securing updated medical records. (*Id.*, PageID.99). The ALJ further informed Plaintiff that if he encountered difficulty obtaining these records, his staff would assist him. (*Id.*, PageID.100).

Plaintiff does not argue that the ALJ failed to obtain or consider any medical evidence then in existence. Instead, Plaintiff argues that the ALJ erred by failing to recommend to Plaintiff that he seek out and obtain a functional capacity assessment. Plaintiff further argues that the ALJ erred by failing to "seek the opinion" of one of Plaintiff's treating physicians. Plaintiff does not articulate what information or evidence this doctor might have provided or how such would cast doubt on the ALJ's decision.

First, Plaintiff has failed to identify authority for the proposition that the ALJ has any duty to advocate a claimant's position. Thus, the Court finds no error in the ALJ's failure to advise Plaintiff what evidence to obtain or otherwise how to present his claim. Moreover, an ALJ is not required to supplement the record with additional evidence unless the record as it then existed was insufficient to assess the claimant's residual functional capacity or otherwise resolve his claims. *See, e.g., Allison v. Apfel*, 2000 WL 1276950 at *5 (6th Cir., Aug. 30, 2000); *Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir., Dec. 11, 2003); *Haney v. Astrue*, 2010 WL 3859778 at *3 (E.D. Okla., Sept. 15, 2010); *Brown v. Commissioner of Social Security*, 709 F.Supp.2d 248, 257 (S.D.N.Y. 2010). As is recognized, "how much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment." *Simpson v. Commissioner of Social Security*, 344 Fed. Appx. 181, 189 (6th Cir., Aug. 27, 2009). As the court further observed, to obligate the Commissioner to obtain an absolute "complete record" in each case "literally would be a formula for paralysis." *Ibid*.

In sum, the ALJ conducted a fair hearing. He provided Plaintiff and his witnesses the opportunity to provide evidence in Plaintiff's behalf. The ALJ properly developed the record and the evidence before the ALJ was sufficient to evaluate Plaintiff's claim. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: May 19, 2022                 /s/ Phillip J. Green
                                   PHILLIP J. GREEN
                                   United States Magistrate Judge